## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TERRY J. T.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 19-CV-684-CVE-CDL** |
| | ) | |
| **ANDREW M. SAUL,** | ) | |
| **Commissioner of the** | ) | |
| **Social Security Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Supplemental Security Disability Income (SSDI) benefits. The matter has been referred to the undersigned for report and recommendation.[1] For the reasons set forth below, the undersigned **recommends** that the district court **reverse** the Commissioner's decision and **remand** for further proceedings consistent with this Report and Recommendation.

## I.      Legal Standards

### A.      Standard of Review

Judicial review of a Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec.*

---

[1]      On November 5, 2020, the action was reassigned from Magistrate Judge Frank H. McCarthy pursuant to General Order 20-37. (Doc. 15).

*Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756

F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and

is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Id.* at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir.

2005)); *see also Biestek v. Berryhill*, __ U.S. __, 139 S. Ct. 1148, 1154 (2019). "Evidence

is not substantial if it is overwhelmed by other evidence in the record or constitutes mere

conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are

"conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may

not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d

at 1178.

### B.     Five-Step Agency Process

The Social Security Act (Act) provides disability insurance benefits to qualifying

individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines

"disability" as an "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

12 months." *See id.* § 423(d)(1)(A).

The Commissioner uses a five-step, sequential process to determine whether a

claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). A finding that the claimant is

disabled or is not disabled at any step ends the analysis. *See id.*; *see also Lax v. Astrue*, 489

F.3d 1080, 1084 (10th Cir. 2007) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)).

At step one, the ALJ determines whether the claimant is engaged in any substantial gainful activity. A person who is performing substantial gainful activity is not disabled.

At step two, the ALJ determines whether the claimant has an impairment or a combination of impairments that is severe. "This determination is governed by the Secretary's severity regulations, is based on medical factors alone, and, consequently, does not include consideration of such vocational factors as age, education, and work experience." *Williams*, 844 F.2d at 750 (internal citation omitted). A claimant who does not have a severe impairment is not disabled.

At step three, the ALJ determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are so severe as to preclude substantial gainful activity." *Williams*, 844 F.2d at 751 (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). If the claimant has an impairment that meets all the criteria of a Listing, the claimant is disabled. Otherwise, the ALJ proceeds to step four.

At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. If the claimant can perform her past relevant work, she is not disabled. Step four is comprised of three distinct phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ determines the claimant's residual functional capacity (RFC) "based on all the relevant medical and other

evidence." 20 C.F.R. § 404.1520(e).[2] Second, the ALJ determines the physical and mental demands of the claimant's past relevant work. *Winfrey*, 92 F.3d at 1023 (citing 20 C.F.R. § 404.1520(e)). Finally, the ALJ determines whether the RFC found in phase one allows the claimant to meet the job demands found in phase two. *Winfrey*, 92 F.3d at 1023 (citing SSR 86-8). If the claimant can perform her past relevant work, she is not disabled.

The claimant bears the burden on steps one through four. *Lax*, 489 F.3d at 1084. If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. *Id.*

## II.   Procedural History

Plaintiff applied for disability benefits on February 7, 2017, alleging a disability onset date of August 1, 2016. (R. 16). Plaintiff alleged disability due to his shoulders, carpal tunnel, cysts on his hands, and high blood pressure. (R. 179). Before his alleged disability, Plaintiff worked as an oil driller and well puller. (R. 50, 180).

---

[2]      A claimant's RFC represents "the most [she] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see Williams*, 844 F.2d at 751. The RFC assessment is made "based on all of the relevant medical and other evidence" in the claimant's record. 20 C.F.R. § 404.1545(a)(3). When a claimant has multiple impairments, the Commissioner "consider[s] all of [a claimant's] medically determinable impairments of which [the Commissioner is] aware." 20 C.F.R. § 404.1545(a)(2).

Plaintiff's claim was denied initially and on reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ). ALJ Luke Liter held a hearing on September 18, 2018, at which Plaintiff was represented by counsel. (R. 16). A vocational expert (VE) also testified at the hearing. *Id.* The ALJ denied benefits in a decision dated October 3, 2018. (R. 13). Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which granted Plaintiff's request for review. (R. 4). On August 30, 2019, the AC provided Plaintiff with notice of its proposed decision finding him not eligible for benefits, and provided Plaintiff and his representative the opportunity to submit a statement about the facts and the law in the case or additional qualifying evidence. *Id*. Plaintiff did not submit anything further, and the Appeals Council issued an unfavorable decision dated October 9, 2019. (R. 1). The decision of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. *Id*.; *see* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff then timely appealed to the district court. (Doc. 1).

## III.   The ALJ's Decision[3]

### A. Step One

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged disability onset date of February 7, 2017. (R. 18).

### B. Step Two

At step two, the ALJ found that Plaintiff suffers from the severe impairments of obesity, degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome,

---

3      While the AC's October 9, 2019 decision is the final decision of the Commissioner for purposes of appeal, the AC adopted certain of the ALJ's findings, as discussed *infra*.

and left shoulder impairment status post arthroscopy. *Id*. The ALJ found that Plaintiff has a non-severe impairment of rectal bleeding. *Id*.

### C. Step Three

At step three, the ALJ determined that Plaintiff's impairments do not meet or medically equal a Listing. The ALJ stated that he gave special consideration to Listings relating to the musculoskeletal system (Listing 1.00, et seq.), digestive system (Listing 5.00, et seq.), and neurological system (Listing 11.00, et seq.). (R. 19). The ALJ considered Plaintiff's obesity according to the criteria set forth in Social Security Ruling (SSR) 02-1p and determined that the functional effects of Plaintiff's obesity combined with his other impairments neither meets nor equals a listing. *Id*.

### D.     Step Four

The ALJ found that Plaintiff has the following RFC:

> [Plaintiff] is able to lift or carry, and push or pull, twenty pounds occasionally and ten pounds frequently. [Plaintiff] can sit for six hours out of an eight-hour day, and stand or walk a combined total of six hours out of an eight-hour day. [Plaintiff] can occasionally reach in all directions (including overhead) with the bilateral upper extremities. [Plaintiff] can frequently handle and finger with the bilateral upper extremities.

*Id*. In explaining the RFC determination, the ALJ discussed Plaintiff's hearing testimony, medical records, and medical opinion evidence in the record, as summarized in part below.

### i.     Hearing Testimony

Plaintiff testified that he lives with his parents in their mobile home in a mutual living arrangement. (R. 20). Plaintiff performed work for his brother in Louisiana for six days in October or November 2017, where he consulted on repairing equipment and handed tools

6

to his brother. *Id*. Plaintiff did not work on the equipment himself. Plaintiff otherwise had not worked since filing his application for SSDI. *Id*.

Plaintiff stated that he is unable to work because of his hands, shoulders, and neck. *Id*. After having surgery on his left hand, he fell on it, and it is now in the same condition as before the surgery. *Id*. Plaintiff also has problems with his right side, including shoulder problems, carpal tunnel, and cysts on the inside of his wrist. *Id*.

Plaintiff stated that he drives approximately once per day, and had driven himself to the hearing, but drives as little as possible. *Id*. He tries to help with chores around the house, sometimes does his own laundry, and sometimes helps his mother run the sweeper. *Id*. He helps with grocery shopping and drives his parents to doctor appointments. *Id*. According to Plaintiff, his hands burn when he drives, he must use both hands for driving, and his shoulders lock up. *Id*. He usually has a passenger check for other vehicles while driving instead of looking left or right himself. *Id*.

Plaintiff stated that he can hold something for a little while, but then needs to change hands. *Id*. His left shoulder improved after surgery, but Plaintiff subsequently re-injured his arm when he slipped and fell on ice. *Id*. He said that his ability to reach varies. *Id*. He also has two kinds of pain in his neck. *Id*. Plaintiff's neck constantly rubs, cracks, and pops; additionally, since the previous week, sometimes a nerve gets trapped, causing a feeling like electrocution or a lightning bolt. *Id*. Plaintiff said that he naps every chance he gets. *Id*.

After considering the evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that his "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record." *Id*.

### ii.     Medical Records

On May 10, 2017, Plaintiff had procedures on his left shoulder, including arthroscopy, arthroscopic subacromial decompression, arthroscopic acromioplasty, arthroscopic distal clavicle extension, arthroscopic debridement of type one degenerative SLAP tear, open excision of dorsal ganglion cyst, and open carpal tunnel release. *Id*. (citing Exhibit 10F, p. 1-4).

On May 22, 2017, Plaintiff had a follow-up appointment from the May 10 procedure with Victor Palomino, D.O., who described Plaintiff as "doing fin[e]." (R. 21) (citing Exhibit 16F, p. 4). Plaintiff reported some soreness in his shoulder, but said that it was improving. *Id*. Dr. Palomino stated that Plaintiff's shoulder looked good and had favorable motion; he could forward flex and elevate the left arm to approximately 130 degrees actively and further passively. *Id*. He had reasonable internal and external rotation and good strength with no deficits, and radiographs showed no concerns; however, Dr Palomino noted a concern with patient non-compliance and overactivity. *Id*.

On September 14, 2017, Plaintiff had another follow-up appointment with Dr. Palomino. *Id*. Plaintiff reported some pain and achiness his hand, but his shoulder was feeling "pretty good." *Id*. Plaintiff denied having any recent injuries. *Id*. Plaintiff's motion had returned, and he showed much improvement from his preoperative baseline. *Id*. Dr. Palomino observed a full range of motion in the left shoulder and good strength and elevation against resistance. *Id*. Plaintiff's hand looked good and showed full function, and

8

the carpal tunnel incision and ganglionectomy incision looked good. *Id*. Dr. Palomino observed no motor, sensory, or vascular deficits in Plaintiff's upper extremity. *Id*.

An MRI of the cervical spine on September 14, 2017 showed degenerative disc disease of the cervical spine, without significant spinal or neuroforaminal stenosis. *Id*.

An x-ray of the left wrist on November 9, 2017 showed soft tissue swelling. *Id*. The osseous and joint structures were intact, without evidence of fractures or dislocation. *Id*. The x-ray showed joint space narrowing with subchondral sclerosis and marginal osteophyte formation of the first carpometacarpal joint. *Id*.

On November 13, 2017, Plaintiff had a follow-up appointment from his MRI. *Id*. Dr. Palomino observed five out of five strength in all extremities. *Id*. Plaintiff had some decreased range of motion with mechanical symptoms, but had no focal motor, sensory, or vascular deficits. *Id*. Plaintiff's reflexes were non-pathologic, and his Hoffman's sign was negative bilaterally. *Id*. Dr. Palomino assessed cervical degenerative disc disease from C3 to C7. *Id*.

On August 27, 2018, Plaintiff visited Wahzhazhi Health Center for a follow-up on neck pain. *Id*. Plaintiff was 68 inches tall and weighed 236 pounds. *Id*. His blood pressure was 126/76. *Id*. Plaintiff rated his pain at ten out of ten; however, he was alert and oriented and in no acute distress. *Id*. He had "some tenderness" to range of motion and palpitation to the posterior neck. *Id*. His respiratory examination was normal. *Id*. Plaintiff's heart rate and rhythm were normal; however, he had a systolic murmur. *Id*. Plaintiff's abdomen was normal. *Id*. He had weakness of an unknown degree in the right hand. *Id*. He also had a nodule to the dorsolateral aspect of the right foot. *Id*. X-rays of the right foot showed mild

9

soft tissue swelling, no acute osseous abnormality, mild hallux valgus deformity with soft tissue bunion, mild degenerative changes of the first metatarsophalangeal joint, and heel spurs. *Id*.

### iii. Medical Opinions

The ALJ noted the medical opinions of state agency reviewing physicians, who limited Plaintiff to an eroded range of light exertion work. (R. 22). The reviewing physicians found limitations were only necessary as to the left side; however, the ALJ determined that based on evidence in the record, additional right-side limitations are also reasonable. *Id*.

### iv. Assessment of Evidence and Symptoms

The ALJ's decision included a paragraph discussing medical evidence supporting the RFC determination. *Id*. The ALJ noted, in particular, Plaintiff's history of left-side surgical procedures, Dr. Palomino's observations in September 2017 that Plaintiff had improved and was feeling good afterward, and that Plaintiff was advised to continue activities as tolerated. *Id*.

The ALJ noted that Plaintiff was injured in a fall on November 8, 2017 and subsequently complained of left wrist pain. *Id*. At Plaintiff's MRI follow-up on November 13, 2017, Dr. Palomino observed five out of five strength in all extremities, non-pathological reflexes, a negative Hoffman's bilaterally, and no focal, motor, sensory, or vascular deficits. He had some decreased range of motion with mechanical symptoms. *Id*. The MRI showed no severe central canal stenosis or spinal cord or nerve root impingement. Dr. Palomino recommended physical therapy. *Id*. The ALJ further noted Plaintiff's visits

to Wahzhazhi Health Center, including his complaints in August 2018 of burning in his upper shoulders and right-hand weakness, and further noted that this complaint differed from the records of Plaintiff's November 13, 2017 follow-up examination. *Id*.

The ALJ noted that Plaintiff drove himself to the hearing and had driven to Louisiana two months earlier. *Id*. The ALJ also stated that Plaintiff worked for his brother in 2017 and that he does dishes, shops, cooks, does laundry, vacuums, and takes out the trash. *Id*. The ALJ found that given his activities, Plaintiff can perform the range of work defined in the RFC determination. *Id*.

### v.     Past Relevant Work

The ALJ found that, with the above RFC, Plaintiff cannot perform any past relevant work. (R. 23).

### E.     Step Five

The ALJ determined that, considering Plaintiff's RFC along with his age, education, and work experience, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. *Id*. The ALJ cited the VE's hearing testimony in finding that Plaintiff can

> perform the requirements of representative occupations such as furniture rental clerk (Light exertion, unskilled, [specific vocational preparation (SVP)] 2, [Dictionary of Occupational Titles (DOT)] # 295.357-018, approximately 77,000 positions in the nation)[;] counter clerk, (Light exertion, unskilled, SVP 2, DOT # 249.366-010, approximately 31,000 positions in the nation) and tanning salon attendant (Light exertion, unskilled, SVP 2, DOT # 359.567-014, approximately 9,500 positions in the nation).

(R. 23-24). Thus, the ALJ found at step five that Plaintiff is not disabled.

IV.    **The AC's Decision**

The AC's decision "adopt[ed] the [ALJ]'s statements regarding the pertinent provisions of the [Act], Social Security Administration Regulations, Social Security Rulings and Acquiescence Rulings, the issues in the case, and the evidentiary facts, as applicable." (R. 4). The AC also "adopt[ed] the [ALJ]'s findings or conclusions regarding whether [Plaintiff] is disabled." *Id*. The AC explained that it

> agrees with the [ALJ]'s findings under step 1, 2, 3, 4 and 5 of the sequential evaluation; namely, that [Plaintiff] has not engaged in substantial gainful activity since February 7, 2017, that [Plaintiff] has severe impairments that do not meet or equal in severity an impairment in the Listing of Impairments, that he is not capable of performing past relevant work, and that there are a significant number of jobs [Plaintiff] is capable of performing.

*Id*.

With respect to symptom evaluation, the AC adopted the ALJ's conclusions as to Plaintiff's statements. (R. 5). Additionally, the AC addressed the statement of Plaintiff's mother, Linda Tisdale, that Plaintiff cannot lift his arms or use his hands. *Id*. (citing Exhibit 3E). The AC gave "some weight" to this statement, finding that it is "partially consistent with the medical evidence at the time it was provided," in February 2017. *Id*. The AC noted, however, that subsequent medical records showed that Plaintiff's left upper extremity functionality improved significantly by September 2017. *Id*. In its statement of findings, the AC concluded that Plaintiff's "alleged symptoms are not consistent with and supported by the evidence of record." (R. 7).

The AC expressly disagreed with the ALJ's consideration of opinion evidence. (R. 4-5). The AC gave "great weight" to the opinions of the state agency reviewing physicians,

noting that they are "largely consistent with the medical evidence of record." (R. 5). However, consistent with the ALJ's decision, the AC found that the reaching, handling, and fingering limitations assessed by the reviewing physicians applied bilaterally, rather than only to the left upper extremity. (*Id.*; *see* R. 22 (ALJ's decision)).

The AC also noted (1) Dr. Palomino's July 10, 2017 opinion that Plaintiff would likely require eight to ten weeks off of work due to his left shoulder and hand procedures; (2) Dr. Palomino's September 14, 2017 opinion that Plaintiff could return to full duty at his regular job without restrictions. *Id*. The AC gave these statements "significant weight," finding them "consistent with the overall evidence of record showing that [Plaintiff] experienced limitations regarding his left upper extremity that required surgery, but subsequently improved with good strength, range of motion, and function in his left upper extremity by September 2017." *Id*. (citing Exhibits 16F; 19F). The AC further noted that "[s]ubsequent records showed no significant further symptoms other than reported neck tenderness and right hand weakness, which were treated conservatively." *Id*. (citing Exhibits 19F; 20F; 21F).

At step four, the AC determined Plaintiff has the following RFC:

> [Plaintiff] retained the [RFC] to perform a reduced range of light work with postural and manipulative limitations. Specifically, he could occasionally crawl and climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and climb ramps or stairs; occasionally reach in all directions with the bilateral upper extremities; and frequently handle and finger with the bilateral upper extremities.

*Id*. The AC adopted the ALJ's determinations that Plaintiff is unable to perform his skilled past relevant work as a well puller and a driller, as the exertional requirements of these jobs exceed Plaintiff's RFC. *Id*.

At step five, the AC noted that at the hearing, the ALJ posed a hypothetical to the VE including the same postural and manipulative limitations assessed in the AC's RFC determination. (R. 6). The AC adopted the ALJ's finding, consistent with the VE's testimony, that with these limitations, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including the representative occupations of

(1) furniture rental clerk (DOT 295.357-018), a light exertional level job with an SVP level of 2, with 77,000 jobs in the national economy;

(2) counter clerk (DOT 249.366-010), a light exertional level job with an SVP level of 2, with 31,000 jobs in the national economy; and

(3) tanning salon attendant (DOT 359.567-014), a light exertional level job with an SVP level of 2, with 9,500 jobs in the national economy.

*Id*. Accordingly, the AC found Plaintiff was not disabled from February 7, 2017 through the date of the ALJ's decision on October 3, 2018. *Id*.

## V.   Discussion

Plaintiff alleges two points of error: (1) The ALJ failed to perform a proper determination of the consistency of Plaintiff's testimony with the evidence of record; and (2) There is an insufficient number of alternative jobs in the national economy for the ALJ to have properly denied benefits at step five. Defendant contends that the ALJ's evaluation of symptoms was reasonable and supported by substantial evidence.

### A.      Intensity, Persistence, and Limiting Effects of Symptoms

Under *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987), in evaluating a claimant's

statements regarding pain, the Commissioner "must consider (1) whether [a c]laimant

established a pain-producing impairment by objective medical evidence; (2) if so, whether

there is a 'loose nexus' between the proven impairment and the [c]laimant's subjective

allegations of pain; and (3) if so, whether, considering all the evidence, both objective and

subjective, [the c]laimant's pain is in fact disabling. *Thompson v. Sullivan*, 987 F.2d 1482,

1488 (10th Cir. 1993) (internal citation omitted).[4]

> When determining the credibility of pain testimony, the ALJ should
> consider such factors as "the levels of medication and their
> effectiveness, the extensiveness of the attempts (medical or
> nonmedical) to obtain relief, the frequency of medical contacts, the
> nature of daily activities, subjective measures of credibility that are
> peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the
> consistency or compatibility of nonmedical testimony with objective
> medical evidence."

*Id.* at 1489 (internal citations omitted); *see also Keyes-Zachary*, 695 F.3d at 1167 (holding

that in evaluating whether a claimant's alleged pain is disabling, an ALJ should consider

"a claimant's persistent attempts to find relief for her pain and her willingness to try any

treatment prescribed, regular use of crutches or a cane, regular contact with a doctor, and

the possibility that psychological disorders combine with physical problems," as well as

"the claimant's daily activities, and the dosage, effectiveness, and side effects of

---

[4]      The Commissioner does not dispute that Plaintiff had "severe" cervical spine
degenerative disc disease, bilateral carpal tunnel syndrome, and a left shoulder disorder
status post-surgery; nor does the Commissioner argue that the "loose nexus" requirement
is not satisfied.

medication." (citing *Luna*, 834 F.2d at 165-66 (internal quotation marks omitted)).

"Credibility determinations are peculiarly the province of the finder of fact." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 2000); *see also White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002) (ALJ's evaluation of symptom allegations "warrant particular deference").[5] The ALJ must explain "the link between the evidence and credibility determination." *Id*. Further, he must give "specific reasons . . . supported by the evidence in the case record" for his credibility determination. 20 C.F.R. § 404.1529. "So long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility, the dictates of *Kepler* are satisfied." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff argues that the ALJ improperly failed to apply the *Luna* factors in assessing his subjective statements. First, Plaintiff argues that the ALJ placed undue weight on Plaintiff's reported activities, such as the fact that Plaintiff drives, performs some household chores, and performed some work for his brother in 2017. The "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson*, 987 F.2d at 1488 (citing *Frey v. Bowen,* 816 F.2d 508, 516–17 (10th Cir. 1987)). Thus, "the ALJ may not rely on minimal daily activities as substantial evidence that a claimant does not suffer disabling pain." *Id*. (citing *Frey,* 816 F.2d at 516).

---

[5]     *See* Social Security Ruling (SSR) 16-3p, 2016 WL 1237954 (explaining purpose of superseding ruling as "eliminating the use of the term 'credibility' from [the Commissioner's] sub-regulatory policy, as our regulations do not use this term," and "clarify[ing] that subjective symptom evaluation is not an examination of an individual's character").

Here, however, the ALJ's decision noted numerous activities indicating that Plaintiff can perform the range of work provided in the RFC—not merely minimal daily activities. *Cf. Thompson*, 987 F.2d at 1488. Specifically, according to Plaintiff's testimony, he drives, had driven himself to the hearing, and had driven to Louisiana two months earlier. In addition, Plaintiff testified that he had worked for his brother in 2017. The ALJ further noted that Plaintiff testified to performing chores such as dishwashing, laundry, cooking, shopping, vacuuming, and taking out the trash. It was not improper for the ALJ to consider these in evaluating the severity of Plaintiff's symptoms and whether his pain is disabling. *See id.* at 1489.

Plaintiff also argues that the ALJ improperly failed to weigh Plaintiff's mother's statements in her function report. However, Plaintiff ignores that, in the Commissioner's final decision, the AC discussed and explained why it afforded "some weight" to Plaintiff's mother's statements. (R. 5).[6] The AC explained that medical evidence supported Plaintiff's mother's testimony that Plaintiff "experienced some limitations in use of his upper extremities in late 2016 and early 2017, although not to the degree reported." *Id.* (citing Exhibits 1F, 2F). However, Plaintiff subsequently "experienced significant function improvement following his May 10, 2017 surgery, with full left upper extremity function noted by September 2017." *Id.* (citing Exhibits 10F, 16F, 19F). In addition, Plaintiff's treating physician opined that Plaintiff could return to work in September 2017, four

---

6      Defendant acknowledges that the ALJ's decision failed to explicitly address Plaintiff's mother's statement; however, Defendant contends that any error in this respect was harmless, as Plaintiff's mother's statement was largely redundant of or less favorable to a finding of disability than Plaintiff's own testimony.

months after surgery. (R. 5). Accordingly, the AC's decision provides good reasons, supported by substantial evidence, for the weight it assigned to Plaintiff's mother's opinion.

Plaintiff next argues that the ALJ improperly ignored treating physicians' opinions that Plaintiff was credible. An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo v. Astrue*, 682 F.3d 1285, 1292 (10th Cir. 2012) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). In finding Plaintiff's alleged symptoms are not entirely consistent with the record, the ALJ cited objective medical evidence, including records showing good healing and improvements in functionality following Plaintiff's left upper extremity surgery, and Dr. Palomino's observation of five out of five strength in all extremities on November 13, 2017, with no focal, motor, sensory, or vascular deficits. (R. 22). In addition, the AC noted Dr. Palomino's opinion on September 14, 2017 that Plaintiff could return to full duty without restrictions at his regular job was consistent with other evidence showing improvements in Plaintiff's strength, range of motion, and function in his upper left extremity. (R. 5). Additionally, Dr. Palomino noted that Plaintiff appeared to be overactive and noncompliant with post-surgery restrictions, which is a proper consideration in assessing a claimant's alleged symptoms. *See Qualls v. Apfel*, 206 F.3d 1368, 1372-72 (10th Cir. 2000).

Thus, the Commissioner's credibility determination was supported by substantial evidence. In addition, Plaintiff does not point to any specific parts of his testimony or statements the ALJ ignored or minimized, nor does Plaintiff indicate what additional

18

limitations the ALJ failed to find.[7] Plaintiff's vague and conclusory argument fails to demonstrate how the ALJ's evaluation of symptoms was improper. Plaintiff has not identified any significantly probative evidence concerning chronic pain that the ALJ ignored or rejected without explanation. *Cf. Clifton*, 79 F.3d at 1009-10. Accordingly, the Commissioner's evaluation of Plaintiff's alleged symptoms was proper under *Kepler*.

### B.    Significant Number of Alternative Jobs

The Commissioner bears the burden at step five to show that a claimant can perform alternative work existing in significant numbers in the national economy. *See Lax*, 489 F.3d at 1084. Plaintiff contends that even if the RFC determination were proper, the Commissioner failed to show that a sufficient number of compatible representative jobs exist in the national economy to support a finding of not disabled at step five.

Plaintiff does not dispute that given the RFC determination set forth in the AC's decision, a claimant could perform the listed jobs of furniture rental clerk (77,000 jobs) and counter clerk (31,000 jobs). However, Plaintiff argues that the VE's testimony is inconsistent with the DOT as to the alternative job of tanning salon attendant, because the referenced job number (DOT 359.567-014) does not exist as a "stand-alone" occupation, and therefore the basis for the VE's citation of 9,500 jobs for that occupation is unclear. The Commissioner does not attempt to argue that it was proper for the ALJ or the AC to

---

7    Furthermore, as both the ALJ's decision and the AC's decision note, Plaintiff's treating physician gave him a full release to return to work in September 2017, four months after his surgery. As this was only seven months after the alleged disability period began, even if Plaintiff was unable to work at some point due to his severe impairments, that time period did not meet the twelve-month duration requirement. *See* 42 U.S.C. § 423(d)(1)(A).

rely on VE's testimony as to the tanning salon attendant job; rather, the Commissioner argues that any error was harmless, as even excluding the 9,500 tanning salon attendant jobs, the remaining 108,000 jobs nationally constitute a significant number.[8]

The problem with the Commissioner's argument is that the Tenth Circuit has not identified a specific threshold for a "significant" number of jobs. Instead, "the issue of numerical significance entails many fact-specific considerations requiring individualized evaluation." *Allen v. Barnhart*, 357 F.3d 1140, 1144 (10th Cir. 2004 (quoting *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992)). The court has explained that therefore "'the evaluation should ultimately be left to the ALJ's common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Johnson v. Berryhill*, No. 15-cv-0421-CVE-TLW, 2017 WL 924477, at *6 (N.D. Okla. Mar. 8, 2017) (citing *Allen*, 357 F.3d at 1144 (internal quotation and citation omitted)).

"A judge should consider many criteria in determining whether work exists in significant numbers, some of which might include: the level of claimant's disability; the reliability of the vocational expert's testimony; the distance claimant is capable of travelling to engage in the assigned work; the isolated nature of the jobs; the types and

---

[8]     Despite the VE's assurance that his testimony was consistent with the DOT, it is not clear that "tanning salon attendant" is a listed occupation in the DOT. (*See* R. 52). Other courts have considered the same issue and have reached varying conclusions. *See Rickey v. Saul*, No. CIV-20-297-SM, at *1 n.3 (W.D. Okla. Dec. 22, 2020) (collecting cases). Regardless, under binding agency rules, the adjudicator is required to resolve any apparent conflict between the VE's testimony and the DOT before relying on a VE's testimony. *See* SSR 00-04p; *see also Holcom v. Barnhart*, 79 F. App'x 397, 398-99 (10th Cir. 2003) (unpublished). Neither the ALJ nor the AC did so here. As the Commissioner does not argue that the VE's testimony regarding the occupation of tanning salon attendant is consistent with the DOT, the court is not in a position to make a finding to that effect.

availability of such work, and so on." *Trimiar v. Sullivan*, 966 F.2d 1326 (10th Cir. 1992) (internal citations omitted). "The decision should ultimately be left to the [ALJ's] common sense in weighing the statutory language as applied to a particular claimant's factual situation." *Id.*

Here, the decisions of the ALJ and the AC reflect consideration of some of these factors. The AC appeared to weigh the level of Plaintiff's disability when it noted that if Plaintiff had the capacity to perform "the full range of the light exertional level," the grids would direct a conclusion of not disabled. (R. 7 (citing 20 C.F.R. § 416.969 and Rule 202.21, Table No. 2 of 20 C.F.R. Part 404, subpt. P, App'x 2)). Accordingly, the step five analysis was necessary only to determine whether Plaintiff is able to do any other work considering his specific limitations—i.e., to occasionally crawl and climb ladders, ropes, or scaffolds; frequently stoop, kneel, crouch, and climb ramps or stairs; occasionally reach in all directions with the bilateral upper extremities; and frequently handle and finger with the bilateral upper extremities. (*See* R. 7). In addition, during the hearing, the ALJ revised the hypothetical to reflect greater limitations in reaching and manipulative capacity. The VE testified that the same three occupations would still be available. (R. 52). Furthermore, both the ALJ's and AC's decisions reflect consideration of the reliability of the VE's testimony. (*See* R. 7 (noting that the VE's testimony is "consistent with the information contained in the DOT"); *see also* R. 24 (ALJ decision noting same); R. 52 (ALJ inquiry to VE as to consistency of testimony with DOT)). Thus, the ALJ's and AC's decisions here indicate a reasonable weighing of the relevant factors.

Accordingly, the issue here is whether the district court may conclude as a factual matter that 108,000 jobs is a significant number of jobs sufficient to find Plaintiff disabled at step five. The Tenth Circuit has explained that making such a dispositive finding based on harmless error is appropriate only in the "exceptional circumstance, i.e., where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way." 357 F.3d at 1145. In *Allen*, the court cautioned that where the number of jobs at issue may fall in a "gray area," applying harmless error risks an "improper exercise in judicial fact-finding." *Id*.

Plaintiff's brief overstates the significance of other cases in which the Tenth Circuit has held that certain numbers of jobs were adequate to satisfy the "significance" requirement. In none of those cases has the Tenth Circuit identified a "floor" or minimum number that must be met. *See, e.g., Stokes v. Astrue*, 274 F. App'x 675, 684 (10th Cir. 2008) (finding 152,000 jobs significant such that no reasonable factfinder could have found otherwise);[9] *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2010) (citing *Stokes*); *compare Norris v. Barnhart*, 197 F. App'x 771, 777 (10th Cir. Sept. 26, 2006) (noting representative occupations with "fairly small" national numbers of 65,000 and 125,000). Plaintiff also misstates the finding of the district court in *Johnson v. Berryhill*, 2017 WL 924477, at *6 (N.D. Okla. Mar. 8, 2017). The district court in *Johnson* did not find that 195,000 was not a significant number of jobs, as Plaintiff asserts; rather, pursuant to Tenth

---

[9]    Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

22

Circuit guidance, the court declined to make a dispositive finding where the Commissioner had not made one, and remanded the case for the Commissioner to make a finding.

The undersigned finds the analysis in *Johnson* is apt. In that case, the ALJ had found the claimant disabled at step five, finding that the claimant could find employment in any one of six alternative occupations. However, on appeal, the Commissioner conceded that five of the six alternative occupations cited by the VE were in fact not available to the claimant due to the claimant's vision impairment. The Commissioner argued that nonetheless, the sixth occupation (dishwasher), in which the VE testified that there were 195,000 jobs in the national economy, sufficed on its own. The district court rejected this argument, explaining that the ALJ had not made a finding as to whether 195,000 dishwasher jobs constituted a significant number in concluding that the claimant was not disabled at step five. Because the Tenth Circuit had not established as a matter of law that 195,000 jobs is a significant number, it was necessary for the ALJ, not the court, to make that determination.

While the Commissioner urges the court to essentially write off the difference between 108,000 jobs and 117,500 jobs as insufficiently significant to warrant remand, the undersigned finds that such a determination would require judicial fact-finding on a matter reserved to the Commissioner. As set forth in *Johnson*, Tenth Circuit precedent advises caution in applying the harmless error doctrine in such circumstances, and the type of "exceptional circumstance" contemplated in *Allen* is not present here. *Allen*, 357 F.3d at 1144. Accordingly, the undersigned finds that the Commissioner's decision should be

23

reversed and remanded for the limited purpose of addressing the issues regarding step five set forth above.

## VI.    Conclusion and Recommendation

The undersigned finds that the Commissioner failed to make sufficient findings at step five and therefore **recommends** that the decision of the Commissioner finding Plaintiff not disabled be **reversed and remanded** for further proceedings consistent with this Report and Recommendation.

In accordance with 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b)(2), a party may file specific written objections to this report and recommendation within 14 days. Any such objections must be filed on or before February 23, 2021.

If specific written objections are timely filed, Federal Rule of Civil Procedure 72(b)(3) directs the district judge to:

> determine de novo any part of the magistrate judge's disposition that has been properly objected to.  The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

The Tenth Circuit has adopted a "firm waiver rule," which provides that the failure to make timely objections to the magistrate judge's findings or recommendations waives appellate review of factual and legal questions. *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)). Only a timely specific objection will preserve an issue for de novo review by the district court or for appellate review.

24

DATED this 9th day of February, 2021.

Christine D. Little
United States Magistrate Judge